UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH J. SKIERSKI,

    Plaintiff,                                     CIVIL ACTION NO. 13-14469

   v.                                   DISTRICT JUDGE ARTHUR J. TARNOW
                                         MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Plaintiff filed an application for Social Security Supplemental Security Income (SSI) benefits on March 8, 2011[1], alleging that he had become disabled and unable to work on May

---

[1] Plaintiff filed prior applications for disability and supplemental insurance benefits in October 2007, alleging the same disability as the present application. Following a de novo review, a different ALJ found that the claimant was not disabled. Plaintiff did not appeal the unfavorable determination, which became the final decision of the Commissioner and binding on all parties (TR 21). Consequently, res judicata applies to the determination of Plaintiff's condition through the date of the unchallenged administrative decision

19, 2010, at age 47, due to back pain, a blood clotting disorder and mental depression. Benefits were initially denied by the Social Security Administration. A requested de novo hearing was held on June 12, 2012, before Administrative Law Judge (ALJ) Oksana Xenos. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of sedentary work providing a sit-stand option with no exposure to moving machinery or workplace hazards. Claimant was also found incapable climbing ladders, ropes or scaffolds. Plaintiff needed to be able to elevate his legs to hip level during regularly scheduled breaks. He could only have occasional contact with the public, and minimal changes in the work setting. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 49 years old at the time of the most recent administrative hearing (TR 39). He had graduated from high school, and had been employed during the relevant past as a construction installer and finisher (TR 31). Claimant alleged that he was disabled, in part, from deep venous thrombosis in both legs caused by a blood clotting disorder. The clotting disorder forced him to stop working in 2000 (TR 40). He also allegedly experienced severe back and neck pain, sleep apnea, peripheral artery disease and periodic depression (TR 42-

---

(April 20, 2010). Bagby v. Harris, 650 F.2d 836 (6th Cir. 1981), cert. denied 454 U.S. 1087 (1981). A federal court may not review the Commissioner's refusal to reopen a previous application absent a constitutional challenge. Blacha v. Secretary, 927 F.2d 228, 231-232 (6th Cir. 1990). Plaintiff present no federal constitutional challenge to the SSA's application of res judicata.

43, 48). Claimant acknowledged that he had not looked for a less physically demanding job because he needed to care for his ailing mother (TR 41).

Pain medications proved ineffective and allegedly caused such side effects as blurred vision and extreme fatigue (TR 43). He spent his days at home watching television while sitting in a recliner with his legs elevated (TR 42). Claimant did not use a cane, despite reporting that walking aggravated his back pain (TR 46). He treated with a mental health therapist on a regular basis for depression and suicidal thoughts. Plaintiff asserted that medications prescribed for his depression interfered with his sleep and aggravated his fatigue (TR 48-49, 51).

A Vocational Expert, Don Harrison, classified Plaintiff's past work as light to medium, semi-skilled activity (TR 31). The witness testified that there were no jobs for claimant to perform if his testimony were fully accepted[2] (TR 55). If he were capable of sedentary work, however, there were numerous unskilled assembly, inspection, monitoring and packaging jobs that he could perform with minimal vocational adjustment (TR 53-54). These jobs provided a sit-stand option where he could alternate positions at will. He would never be required to climb ladders, ropes or scaffolding. Claimant would not be exposed to moving machinery or workplace hazards. He would be permitted to elevate his legs to hip level during regularly scheduled breaks. He would only have occasional contact with the public. There would be minimal changes in the work setting (TR 53-54).

---

[2]The witness opined that, if claimant needed to take unscheduled breaks every day exceeding 10 percent of the work day, all work activity would be precluded (TR 55).

3

### B.     ALJ's Findings

The Administrative Law Judge found that Plaintiff was impaired as result of a blood clotting disorder (Factor V Leiden disorder), degenerative disc disease and depression, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's back and neck pain limited him to jobs that allowed a sit-stand option where he could alternate positions at will near his workstation. He would not be exposed to moving machinery or workplace hazards. There would be no need to frequently flex his neck.  He would not have to climb adders, ropes or scaffolds.  There would be minimal contact with the general public, and few changes in the work setting.  Consequently, the ALJ found that the claimant retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 23-32).

### C.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions.  Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).  This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of

credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### D. Discussion and Analysis

After review of the record, I suggest that substantial evidence supports the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work providing a sit-stand option at will where he would not be exposed to moving machinery or workplace hazards. Contrary to Plaintiff's assertion, the medical evidence does not support his allegation of totally disabling back and neck pain. The blood clot disorder and mental depression were well controlled with medications, and did not cause any disabling functional limitations. The ALJ's decision was consistent with the specific limitations imposed by examining physicians.

The medical evidence reveals that claimant's back and neck pain would not prevent him from performing the less exertional demands of sedentary work. A treating physician, Dr. Thomas Giancarlo, reported in February 2011, that an EMG of the upper extremities

found no signs of generalized neuropathic process, entrapment or radiating pain symptoms (TR 244). An MRI of the cervical spine showed only mild to moderate canal stenosis (TR 241). Plaintiff was treated conservatively for the back and neck pain with medications and vitamin B12 shots (TR 421, 416- 421). This successfully reduced the joint pain and discomfort, as claimant went four months without seeking additional medical treatment (TR 415-416). Claimant's last complained of neck and back pain in October 2011, when he sought medication refills (TR 415). The fact that there is no other medical evidence in the record regarding claimant's neck and back pain suggests that these impairments are not disabling.

The medical record also indicates that medications helped alleviate claimant's sleep problems. Dr. Jose DeSousa reported on December 2, 2011, that there was no need for Plaintiff to continue to see him, as he did not have obstructive sleep apnea. The doctor added that the drug Ambien had helped reduce claimant's insomnia (TR 406).

Claimant's depression was also successfully treated with therapy and medications. Plaintiff's treating psychologists, Naquisha Howard-Stubbs and Pamela Adkins, indicated he received treatment from October 2010 through April 2012 (TR 269-381). In therapy notes from 2010, Ms. Adkins wrote that, while Plaintiff had experienced suicidal ideation in the past, he did not have these thoughts at present (TR 281, 290, 312, 305). As the year progressed, Plaintiff started to show improvement. Ms. Adkins stated that claimant's mood was "stable" and that his depression was decreasing.

Another therapy note from December 2010, indicated that the claimant was feeling "good", and that Zoloft was helping with his depression (TR 278). Plaintiff told Ms. Adkins that he had recently been to a funeral, where he connected with family and friends, and they discussed how beneficial this experience had been (TR 278). A month later, Ms. Adkins commented that Plaintiff was "doing much better", and that he had been improving on his crisis plan, developed in November, in order to address his depressive symptoms and suicidal ideation (Tr. 272-273).

Treatment notes from 2011 and 2012 revealed that Plaintiff "is stable; depression has decreased; he is not suicidal." (TR 272-273). By May 2011, Ms. Adkins believed that Plaintiff was no longer depressed, and that his mood remained stable (TR 370). Records from 2012 continue to show that the claimant was "doing better on Remeron", and that his depression was much better (TR 330). Mental health therapy apparently helped the depression since claimant told examiners that he was sleeping better, and that his mood was less stressed (TR 362, 370).

Although Plaintiff recites a litany of facts, he fails to explain how the ALJ erred in making her RFC determination. The ALJ accommodated his back pain by banning the climbing of ladders, ropes and scaffolds. She also determined that claimant would only have to occasionally balance, stoop, kneel, crouch and crawl (TR 26). The ALJ noted that Plaintiff had one incident of deep vein thrombosis in 2002 with no recurrence, and that he took anticoagulants to treat his factor V Lieden disorder (TR 27). The ALJ accommodated the blood clot condition by allowing Plaintiff to sit and stand at will at his workstation. In

7

addition, the ALJ further limited claimant to jobs where he was permitted to elevate his legs to hip level during regularly schedule breaks and lunch periods (TR 26). Finally, the ALJ took into consideration claimant's neck pain by limiting him to work where he could "occasionally flex neck sideways and upwards" and where he could "avoid hazards, such as unprotected heights and moving machinery" (TR 26-27). Plaintiff does not point to any evidence in the record suggesting that he had more functional limitations that were not included in the RFC.

Plaintiff points to the fact that he was prescribed anti-depressive medications. That fact, standing alone, does not, I suggest, mean that he had disabling depression. The ALJ took into consideration claimant's objectively proven mental limitations by restricting him to unskilled work with limited interactions with the general public, and only minimal changes in his work setting (TR 26). These limitations were meant to address Plaintiff's issues with depression and handling stress. The ALJ gave significant weight to state agency reviewer James Tripp, Ed.D., who reported that Plaintiff's affective disorder caused only mild restriction in activities of daily living and social functioning[3]. The doctor added that claimant had just moderate difficulties in maintaining concentration, persistence or pace (TR 90). The ALJ reasonably found that the medical evidence did not support Plaintiff's allegations of severe and disabling depressive symptoms.

---

[3]The ALJ observed that during the hearing Plaintiff was able to participate fully, and responded to questions in an appropriate manner (TR 30). Claimant stated that he was able to take care of his mother, drive, smoke a few cigarettes a day, pick up after himself, and that he did not use any assistive devices in order to ambulate (TR 40-42, 44, 46). Treatment notes also indicated that claimant talked about "connecting with friends and family", that he had friends who visited, and that he actually lived with friends for a period of time in 2011 (TR 269, 275, 278).

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments, the Vocational Expert testified that there were numerous unskilled assembly, inspection, monitoring and packaging jobs that he could perform with minimal vocational adjustment (TR 53-54). These jobs provided a sit-stand option where he could alternate positions at will. He would never be required to climb ladders, ropes or scaffolding. There would be only an occasional need to flex his neck, and he would not be exposed to moving machinery or workplace hazards. He would be permitted to elevate his legs to hip level during regularly scheduled breaks. He would only have occasional contact with the public, and minimal changes in the work setting (TR 53-54). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                            CHARLES E. BINDER
Dated: January 6, 2015                        United States Magistrate Judge